And the last case on the calendar for today is number 20-3419, Yany's Garden LLC versus City of New York. Mr. Yen. Good morning, Your Honor. My name is David Yen.  I would reserve four minutes for rebuttal. Hold on. Mr. Rodriguez, can you adjust the clock to reserve four minutes for him? Great. Okay, you may proceed. Good morning, Your Honor. My name is David Yen. I represent Plantech. The action that is called below arises in the dark day in Queens County, New York City, where Plantech was discriminated due to his dark skin as Southern Indian race. The district court dismissed the actions based on the defendant's statute of limitation defense and lawful federalized doctrines. However, defendant actions are not discrete acts, but a series of separate acts that collectively constitute one unlawful practice that eventually deprive the Plantech's property rights in October, 2017. Thank you. Can I- Counsel, you've muted yourself, I think. I did not really, Your Honor, I did not really mute. I don't know why it turned to the mute. You might've hit the space bar, but we can hear you now. Okay, sorry for that. The series of acts that you described that created that continuity that you're seeking to get over the statute of limitations, as I'm understanding it, is the act of the city in repairing the property and assessing the charges of that to the tax bill, the act of the city in foreclosing, and then the act of the trust, I mean, in selling to the trust, and then the act of the trust in foreclosing, or what are the specific acts that make that series? Your Honor, what we, the Plantech's position is, whether these defendant's action were discrete acts or continuity violation depends on the purpose of these kind of acts. Defendant's purpose is to expel Plantech Heck from where he tried to build his home in Whitestone, Queens County, New York. When he tried to build his, when he bought the piece of land there, he tried to build his home there. However, due to his dark skin and a Southern Indian race, certain people in there did not want him to live there, so make numerous bases complained to the city agents. And if you look at a history of these kind of Queens County, when the city defendant took actions in 2005, 2007, they revoked Mr. Heck's building permits, and eventually declared emergency declaration, tried to remove the structures in a vacant land. However, there was no such vacant land. At the time, the property tax per quarter, if you based on the, that's only $161.75 per quarter in 2010, but the city tapped the Mr. Heck with over $2,200, these tax bill for demolition work. It was a vacant land, there was no structures above the ground, and the emergency order to demolish the structure should not be, never be imposed. However, at that time, these actions of defendants never actually depraved the Plaintiff Heck's property rights. He was still there. All these actions carried out by defendants cumulatively until the last minute in October, 2017, took away the property rights of Plaintiff Heck. Since you have to consider the purpose defendants at that moment in October, 2017, reached their purpose to expel Plaintiff Heck from their locations. Maybe I missed it in your complaint, but it seemed to me that your 1983 claim, all alleged events that the city deprived you of due process by failing to provide you with a pre-deprivation hearing before remediating the property, that the remediation work constituted an unlawful seizure of Mr. Heck's property, and that the city treated Mr. Heck differently from others similarly situated, those all go back to the earlier events, eight years before you filed your complaint, yes? That's true. We also submitted the proposed amendment complaint with these kind of actions. And when the city tapped Mr. Heck, the Plaintiff Heck with big tax bill, where the property tax in that time in 2010, that's only 100, it's under $200. But the tax bill tapped to Mr. Heck was over $200. However, these kind of, up to that moment, you under that truth. And we proposed amendment complaint to cure these defects, but district court denied that the Plaintiff's request to amend these complaints, because they said that statute limitation already ran in 2010, or in 2014, and you cannot really allege any civil rights violation of the defendants. However, this case is about it. Maybe by first impression is, but it's about it. So city defense action is by single action, you really cannot really reach to the sharehold amount of mistreatment when the Plaintiff lost his property rights. If you consider all these together, then you see that's a purpose, because the initial complaint to revoke the Plaintiff Heck's property building permits, it's a purpose to expel him, but they did not reach that effect until they now continue this violation of the rights, revoking property building permits, do the, declare the emergency declarations to remove the structure on the vacant land that there was no such structures, big tax bill, $27, where the normal tax, property tax, that's only $160 per quarter, until the foreclosure in 2017, and the trust defendants, and city defendants, trust defendants action that's imputed to the city, that's under the current level of law, they are the part of the actions to eventually expel the Plaintiff from their locations. So that's one. And also- Mr. Yan, you've reserved four minutes for rebuttal. Yes, okay. Your time has expired. We'll hear from the appellees. I have two counsel, but not a division of time. So if you can introduce yourself and say what you plan to do, that'd be helpful. Thank you. Please, the court, Tahir Sadio appearing on behalf of the city appellees. I can go first. All right. The Plaintiff's claims against the city are time barred. There's a three year statute of limitations, and the Plaintiff's claims against the city accrued at latest in June of 2011, when emergency repair charges were posted to his statement of account. And he had reason to know of the city's actions in remediating the emergency condition at the premises and in imposing the charge for that work. Plaintiff's contention that there's a continuing violation is not actually even properly before the court, as he did not raise that until, he did not raise that in his motion to dismiss at all. He did not raise it even in his motion for re-argument and to amend the complaint until a letter submitted post-argument addressing something different. But in any event, there was no continuing violation because each of these separate actions by these different agencies of the city were discrete actions that gave rise to separate injuries. The correction of the violation destroyed the work that he had done on the foundation that he alleged he spent a certain amount of money on. And then the posting of the charge was a separate injury that he could have given rise to an action. This is not something where there was like a hostile work environment where there were a number of actions that were insignificant in and of themselves. But in any event, even if there was a continuing violation, the last city action was the sale of the lien to the trust in 2012. And that was five and a half years before he brought his action here. And so it would still be untimely. Plaintiff's contention that somehow the actions of the trust and of the bank were actually city actions is, for one thing was again, was raised for the first time in reply in this court. And there is no basis for that. I mean, the Bank of New York and the trust are separate entities. They are private entities. They are not city agencies. And so there certainly is not a reason to construe any of their actions as city actions, much less a continuing action with the work that had happened before that. Can you explain, this was an unfamiliar framework for me. Am I right in understanding that this trust is the mechanism whereby the city takes properties in which it has liens, transfers them, and then the trust sort of exists for the purpose of either, I suppose, working it out or foreclosing if necessary? Yes, the city transfers the lien to the trust so that the private, that entity can then take action in terms of foreclosing or other work so that the city doesn't then have to follow through on it. It's not a city agency that it is transferred to. Does the trust accumulate liens and property interests from other stakeholders, or is it exclusively, is this trust exclusively the repository for the city's liens and property interests? I am going to have to defer to my colleague on that question. I apologize. And I would also point out that the complaint itself, even if one were to get to that, fails to state a section 1983 cause of action for the reasons stated in the brief. And his motion to amend was properly denied as it was at first not brought until well after, well, until after most of the claims had already been dismissed. And in his initial motion, he failed to even articulate how or why he should be permitted to amend. He failed to submit the proposed amended complaint until reply. And even the amended complaint was futile as there was no factual basis making any of the claims against the city timely. If the court has no further questions, I will rest on my brief and ask that the judgment of the district court be affirmed. Thank you. Mr. Abraham. Good morning, your honors. May it please the court. First of all, Judge Robertson, before I get to my pitch to answer your question. Yes, the trusts are actually, there's a new trust that is created every year because every year the city sells their liens for that particular year. And it takes years before it actually ripens. That's why you see in this case, you see things going on in 2005, six and seven, and then the sale only took place, I believe in 2012 to 13, before it ripens to the point where it actually evolves into a sale. And in that particular year, you'll notice that the trust has a name, the NYCTL 2012 trust, because that's the trust that was created for that year for the very purpose of now transferring from the books of the city to the trust. So the trust, so the city gets its money right away. They don't have to wait years until a foreclosure action happens or a settlement happens. And in return, it's almost like an investment. And the NYCTL then gets the rights of the city, all the rights of the city to proceed against those liens. And in this case, so that's exactly what the NYCTL did. They essentially moved eventually to foreclose and it resulted in a tax foreclosure, judicial foreclosure lien in a state court action in October of 2018. And what the court correctly, the district court correctly found was that the attack of that state court judgment of foreclosure and sale is basically, essentially amounts to an end run around a state court decision where they're trying to appeal a state court judgment and attack it through the federal system, which is under the Rooker-Feldman Doctrine is completely inappropriate. Certainly the court, when Mr. Yan says that in October of 2018, he lost the rights to the property. I mean, there was nothing preventing Mr. Yan from going to the state court. And even after the sale of the property, the real property law of New York, 231, permits within a year after the sale for somebody to go into state court, if there was any impropriety with that proceeding, because it has to go to the highest bidder and that was followed here. If there was any problem with it, and when I submit to you that the problem that's identified by the appellant here is completely inaccurate. As I addressed in my papers, we didn't buy the place. My client did not buy the property for $200 in a bid. There was a $76,000 tax lien that had to be, that they credit bid on, and that has to be paid at the time of the sale. And if there was any impropriety associated with that state court action judicial sale, the appellants in this case could have gone to state court anytime within a year and raise that with the state court. They didn't do that. And finally, with respect to the motion to amend, the district court was correct that there was an inordinate delay, it was only brought up, it's a state court action, it was only brought up in opposition to our motion to dismiss very late. And the key is also that the idea that there was a bankruptcy filing, there were actually two bankruptcy filings here that violated some sort of bankruptcy stay that is also incorrect. There was a court order that's attached to the papers. It's in the record that basically shows that the, because it was a second filing, there was a termination of the bankruptcy stay in February of 2011, I believe it was, which is well before the state foreclosure action was commenced. And that's essentially all I have to say. If the court has any questions, I'll be happy to answer any questions. Thank you, counsel. We'll hear from Mr. Yin for four minutes of rebuttal. You're muted. Your Honor, trust defendants admit that they act upon the state. They say the general and the New York law, once the city sell the tax lien to the trust, the trust has all the city's rights to enforce a tax lien through a foreclosure proceeding as if the city did not sell the lien. So the trust defense action, it actually is a product of state compulsion by the city defendants of the city defense sold the tax lien at issue to the trust defendants in 2012. And regarding the city defendants, the district court denied that the plaintiffs request the American plan. And we did a procedurally correct to request district court to allow that the plan to American plan. And I believe that the district court abused its discretion to deny it. And we also proposed that one until the district court simply denied the plaintiff's action because district court saw that wasn't there. And even that's a lot of plaintiff deny or the American plan, they'll be full time because that the statute of limitation defense. And the plaintiff does not have to raise the legal series in that campaign. And also that's a plaintiff, it's a defendant's motion to dismiss so that the plan to can raise these kind of theory in their opposition to the defendant's motion to dismiss based on rule 12B6. And regarding the trust defendants claim that they sold the property to highest bidder and saying that they did not sell the property for $200 to themselves. And we learned this one from the referee and to them. So when we, this issue can be resolved during the discoveries where not they sold them, sold it to themselves for $200 or sold it to 76 on that. But anyhow, they did not really sell in the public options to any high bidder in 2018. I don't know if you wanna have any question to us. Okay, thank you, counsel. We'll take the case under advisement. That concludes our arguments for today. I'll ask the courtroom deputies to adjourn. Thank you. Court is adjourned. Thank you, judges. I'll transfer you now. Thank you. Thank you.